**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WILLIE R. NEAL,**

   **Plaintiff,**

**vs.**                                    **Case No.  4:13cv403-RH/CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of the Social
Security Administration,**

   **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) filed pursuant to Title II of the Social Security Act (Act) and an application for Supplemental Security Income (SSI) filed pursuant to Title XVI of the Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I.  Procedural History

On March 26, 2010, Plaintiff, Willie R. Neal, filed applications for DIB and SSI alleging disability beginning July 16, 2006, based on problems with both wrists, his

eyesight, and mesothelioma.  R. 35, 38, 141-51, 177.  (Citations to the record shall be by the symbol "R." followed by a page number that appears in the lower right corner.)  At the administrative hearing, Plaintiff, with the advice of his attorney, amended his alleged onset date to March 4, 2010, which coincides with Plaintiff's 50th birthday.  R. 35, 53, 57.  Plaintiff's date last insured for DIB is December 31, 2011.  R. 35, 204.

Plaintiff's application was denied initially on June 9, 2010, and upon reconsideration on July 12, 2010.  R. 35, 68-69, 78-79, 82-98.  On August 23, 2010, Plaintiff requested a hearing.  R. 35, 99-100.  On October 4, 2011, Administrative Law Judge (ALJ) Michael J. Amendola held a hearing in Tallahassee, Florida.  R. 35, 47-67.  Plaintiff was represented by Joe G. Durrett, an attorney.  R. 35, 80-81, 105.  Plaintiff testified during the hearing.  R. 35, 50-64.  Ronnie C. Mayne, an impartial vocational expert, briefly testified during the hearing.  R. 35, 65-66.

On November 7, 2011, the ALJ issued a decision and denied Plaintiff's applications for benefits concluding that Plaintiff was not disabled from July 16, 2006, through the date of the decision.  R. 41.  On November 22, 2011, Plaintiff requested review of the ALJ's decision.  R. 30-31.  On March 12, 2012, counsel submitted a two-page letter/brief and additional evidence dated January 27, 2012, and February 9, 2012, (submitted on March 20, 2012, R. 24) from Tallahassee Orthopedic Clinic (TOC).  R. 24-29, 228-29 (Exhibit 14E).  On April 19, 2013, the Appeals Council considered the submitted evidence and denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.  R. 1-16; *see* 20 C.F.R. § 404.981.

On June 17, 2013, Plaintiff's current attorney, Riley J. Fenner, filed a Petition requesting the Appeals Council to extend the time for filing a civil action.  R. 4.  On June 25, 2013, the Appeals Council granted the request and extended the time to file a civil action for 30 days from the date the letter was received by Mr. Fenner.  R. 1.  On July 18, 2013, Plaintiff filed a timely Complaint with this Court seeking review of the ALJ's decision.  Doc. 1.  The parties filed memoranda of law, docs. 11 and 12, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant has not engaged in substantial gainful activity since March 4, 2010, the amended alleged onset date."  R. 37.

2. "The claimant has the following severe impairments: status post right radius fracture and forearm muscle hernia, and a left hand laceration."  *Id.*

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*

4. "[T]he claimant has the residual functional capacity [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  R. 38.

5. "The claimant is unable to perform any past relevant work."  R. 41.

6. "The claimant was born on March 4, 1960[,] and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date."  *Id.*

7. "The claimant has at least a high school education and is able to communicate in English."  *Id.*

8. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id.*  The ALJ determined that Plaintiff had only nonexertional limitations.  As a result, the ALJ determined that based on Plaintiff's RFC for the full range of light work, considering the above factors, Plaintiff was not disabled under Medical-Vocational Rule (the grids) 202.14.

*Id.* The ALJ did not specify any particular jobs Plaintiff could perform notwithstanding the testimony of the vocational expert who identified several sedentary jobs Plaintiff could perform based on a hypothetical question. R. 41, 65-66.

9. "The claimant has not been under a disability, as defined in the Social Security Act, from July 16, 2006, through the date of" the ALJ's decision. *Id.*

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[1]

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement).[2] Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

---

[2] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise. The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairments?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.    Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  An ALJ

---

[3] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  Id.  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c).

may make this determination either by applying the grids or by obtaining the testimony of a vocational expert. Phillips, 357 F.3d at 1239-40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. The Evidence

### A. Plaintiff's Hearing Testimony and Pre-Hearing Reports

Plaintiff lives in a renovated trailer in Quincy, Florida, with his girlfriend, her son and nephew. R. 50, 64. Plaintiff has a Florida identification card, but no driver's license. R. 50-51. He has no medical coverage to pay his bills. R. 51. Plaintiff was 50 years old on his amended alleged disability onset date. R. 57. Plaintiff passed his GED tests. R. 50, 178. Plaintiff was incarcerated from October 18, 2007, to June 15, 2009, and also in jail from July or August 2007, preceding this term. R. 51-52.

Prior to his incarceration, Plaintiff had "done roofing since 1980."[4] R. 53. Plaintiff fractured his right forearm in 1998 and had surgery. R. 53, 57-58. (In 1998, Plaintiff slipped off a ladder and fractured his right forearm. R. 54, 183.) The hardware from the surgery was removed in 1999. R. 53.

After recovering from the surgery and removal of the hardware, Plaintiff returned to roofing work, although he "had a little help from [his] team mates." R. 53-54, 58-59. He worked for a company throughout the whole time. R. 54. For 20 years, he carried

---

[4] Aside from some gaps in his work as a roofing laborer, such as between April 1998 to February 2000, Plaintiff worked for several roofing companies from October 1979 to July 2007. R. 154-55, 162 (10/79-07/07). As noted by the ALJ, Plaintiff's highest years of earnings were in 2003 ($21,810.89) and in 2004 ($22,411.04) "after recovering from his injury (Exhibit 5D)." R. 39; *see* R. 155, 157, 162-69, 179, 227. Plaintiff earned $16,642.21 in 2005 and $19,594.75 in 2006 while employed by a roofing company. R. 155, 157.

shingles on his shoulder and got them on a ladder.  R. 58.  After his injury, for the heavy

work, he did the heavy lifting with his left hand and used his right hand as a guide.

R. 59.  Now, his right hand is "very, very sensitive.  [He] can't do anything with it, the

more [he does] with it, the more it swells and it's sensitive to the touch right here, and

…."  *Id.*  In the past, he was able to work as a roofer as supplemented with his left hand.

R. 60.  He never had any real treatment for his left hand.  R. 60.  He stated he cannot

work as a roofer with the condition of his left hand.  R. 60-61.  Given his condition, he

cannot swing a hammer or lift and carry and lay shingles.  R. 61.  He can lift a gallon of

milk with two fingers.  R. 62.  He also has problems with his knee.  He explained that he

walked approximately two miles to the bus stop to take the metro bus to the hearing.  *Id*.

He felt terrible the day of the hearing and his knee was worse after walking that

distance.  R. 63-64.  His knee swells in the back and aches.  R. 63.

In 2009, Plaintiff injured the ulnar nerve in his left hand as a result of a laceration.

R. 55.  Plaintiff clarified that his sister and another female had a fight and he tried to

stop the fight.  R. 54.  His sister threw a crystal-like vase at the other female.  The vase

split "all the way down" and hit his arm.  R. 55.  Plaintiff explained that the area on his

right wrist (injured in 1998) was "completely numb" and "[i]t's painful all the time."  *Id*.

The ALJ stated that he had not seen "too much follow-up regarding that" and

inquired whether Plaintiff had consulted with a doctor.  R. 56.  Plaintiff explained he

"was going through vocational rehab," and he did not

> have any coverage for the doctor myself and they was helping me out and -- . . .
> they sent me for evaluation and they had me on a plan or something to go
> somewhere else, but for some reason, unknown to me, it stalled.  I was in there, I
> think, a month ago, and they said something about the lady I'm suppose[d] to –
> my counselor was out. . . .  And my case can only move forward through her

supervisor. . . . And they haven't made any contact with me since, in about a month.

R. 56.

The ALJ inquired whether Tallahassee Orthopedic & Sports and Physical Therapy (TOSPT) made recommendations regarding any independent home exercise program.  *Id.*  Plaintiff stated they gave him some paper exercises for his shoulder and told him to put "a warm rag or something on [his] shoulder" and said he needed therapy and "some other stuff for the wrist" and spoke of sending him to a hand specialist, but it did not materialize.  R. 57.

The ALJ asked Plaintiff to describe his average day.  R. 63.  Plaintiff mostly reads Western books and sits at home.  R. 64.  He cannot do anything; he sits around and watches television and tries to help his girlfriend wash dishes.  He and his girlfriend receive food stamps.  In March or April 2010, a friend, who had been living with his girlfriend's grandmother, had a trailer that was about to become dilapidated.  Plaintiff and his brother repaired the trailer to the extent it was livable.  Plaintiff was then able to rent it for $200 a month.  *Id.*

The ALJ considered Plaintiff's hearing testimony and pre-hearing reports:

The claimant is alleging an inability to work due to problems with both of his wrists, his eyesight, and mesothelioma (Exhibit 3).  The claimant's longitudinal medical history is not necessarily consistent with his allegation of disability.  The objective medical evidence does not fully support the degree of severity of the claimant's allegations, as discussed below.

Despite of [sic] his complaints and allegations, the claimant's ability to perform light household chores, turn a door knob, pick up a gallon of milk, button buttons, tie his shoes, cook, perform all of his personal hygiene needs, drive, watch television, and walk two miles to the bus stop, generally reveal functioning at a greater level than alleged (Exhibit 4E and Testimony).[5]

---

[5]  In April 2010, the Pensacola Area Disability Determinations interviewed (by telephone) Plaintiff in connection with his claims for DIB and SSI.  R.187 (Exhibit 4E).

The claimant testified that he started working as a roofer in the early 1980's in 1998 fractured his right radius and herniated his right forearm muscle.  Treatment records indicate the claimant had the plate removed from his right arm in January 1999 (Exhibit 2F).

At the hearing, the claimant testified that even though he is right-handed, he was able to return to his job doing roofing work.  The claimant reported that when he returned to work, he used his left-hand to supplement his performance, especially when lifting things or received assistance from one of his co-workers.  The claimant's earnings record shows that the claimant began working again in 2000 and in fact had his highest years of earnings in 2003 and 2004 after the recovery from his injury (Exhibit 5D).

The claimant previously reported that he did not stop working due to his medical problems but was laid off in July 2006 then a year later was incarcerat[ed] for almost two years (Exhibit 3E).  At the hearing, the claimant testified that since his release in June 2009 is not returned to work now because of his medical condition.

R. 38-39.

### B. The Medical Evidence

In 1998, Plaintiff fractured his right forearm and his wrist was injured when he

slipped off a ladder coming off a roof; he caught his right arm between the steps.

R. 183, 230.  Plaintiff had an initial surgery and subsequently had the surgery hardware

removed from his right forearm.  R. 233.  The record indicates that the next time Plaintiff

was medically examined was in October 2007 by the Florida Department of Corrections.

R. 243.  His examination findings were unremarkable.  R. 243-45, 273-74.

On May 25, 2010, Wayne Sampson, M.D., performed a consultative examination

of Plaintiff.  R. 279-84; *see* R. 40.  Plaintiff reported experiencing right wrist and thumb

---

During this interview, Plaintiff reported that he is able to turn a door knob with both hands, pick up a gallon of milk with his right hand, button a shirt, tie his shoes, cook for himself, care for his personal hygiene, and do household chores, including dishes.  *Id.* He wore glasses and understands his mail.  He watches television and is able to drive, but switches hands because of his wrist injury.  He did not report a diagnosis for mesothelioma.  He reported shortness of breath "every now and again," but had no doctor and no x-ray.  *Id.*

pain since his 1998 injury, as well as medial forearm pain and intermittent numbness in his right thumb.  *Id.*  Plaintiff also complained of numbness in his left hand following his November 2009 injury.  *Id.*  Plaintiff complained of right knee pain, as well as pain and numbness in his right leg after walking 200 yards.  *Id.*  He reported that he could not push a lawnmower for more than 15 minutes—thereafter his "right leg goes numb."  *Id.*

On examination, Plaintiff was fully oriented and in no acute distress.  R. 280.  His mood was within normal limits.  He had 5/5 motor strength throughout, including in his hand grip.  *Id.*  The dexterity of Plaintiff's hands was preserved, but he had decreased sensation to pinprick in his left 3rd through 5th fingers/hand.  His tandem walk was within normal limits; his gait was normal; and he was able to stand and walk on his heels and toes.  *Id.*  Plaintiff's range of motion was within normal limits.  R. 282-84. Dr. Sampson further noted that Plaintiff was able to get up from a seated position and get on and off the exam table without difficulty.  R. 281.  Plaintiff had no tenderness or spasms in his neck or back and his straight leg raise was negative.  R. 281, 284.

Plaintiff's left hand revealed a healed laceration in the ulna styloid area, but there was no swelling, heat, or tenderness.  *Id.*  Plaintiff's right hand showed no swelling or tenderness, but he had mild pain with range of motion of his thumb.  *Id.*  Plaintiff's wrists revealed no heat, swelling, or tenderness, but there was pain with flexion and extension of the right wrist.  *Id.*  Plaintiff exhibited tenderness in the distal medial half of his right forearm, but there was no heat or erythema.  *Id.*  Plaintiff had no tenderness or erythema in his right knee, but there was a compressible, cyst-like lesion there.  *Id.* Plaintiff's legs were within normal limits.  *Id.* Dr. Sampson diagnosed Plaintiff with chronic pain in his right wrist and forearm, neuropathy in his left hand, soft tissue mass

in his posterior right knee, and dyspnea. *Id.* Dr. Sampson recommended that Plaintiff follow-up with his treating physician for continued health care. *Id.*[6]

On July 12, 2010, Robert Steele, M.D., a non-examining physician, completed a physical residual functional capacity assessment for Plaintiff. R. 288-95; *see* R. 40. Dr. Steele opined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, and stand, walk, and sit about 6 hours in an 8-hour workday. R. 289. Dr. Steele concluded Plaintiff had no pushing or pulling limitations, and no postural or manipulative limitations. R. 289-91.[7]

On November 2, 2010, Plaintiff was seen at TOSPT. R. 297, 302; *see* R. 39. He was referred by vocational rehabilitation for evaluation and treatment recommendations. Plaintiff reported a history of fracture to his right wrist for which he underwent two surgeries. *Id.* Plaintiff reported that he returned to work following the surgeries and physical therapy, and continued working until he lost his job. *Id.* Plaintiff stated that he had difficulty securing new employment. *Id.* Plaintiff also indicated that he injured his left wrist in November 2009 during an altercation between his sister and her friend. *Id.* Plaintiff reported pain and tingling in the ulnar wrist and hand since the injury. *Id.*

On examination, Plaintiff's range of motion regarding his ulnar nerves was "grossly within functional limits" and his reflex/sensory integrity was "peripheral nerve sensation" on the left. R. 297-98. Plaintiff's overall rehabilitation potential was considered "good" and the expected length of therapy was estimated to be two months.

---

[6] The ALJ considered Dr. Sampson's report, but did not expressly state the weight he assigned to it. R. 40.

[7] The ALJ considered Dr. Steele's evaluation and gave it "some weight to the extent that the assessment is consistent with the [RFC] stated above. However, based on testimony and evidence received at the hearing level I have found the claimant to be more limited than determined by the State agency consultant (Exhibit 7F)." R. 40.

R. 299.  Plaintiff needed skilled rehabilitation therapy in conjunction with a home

exercise program.  The diagnoses were: "brachial neuritis NOS" and "open wound

forearm-compl" for the left wrist/hand and "rotator cuff synd NOS" for the left shoulder.

*Id.*

On June 21, 2010, Plaintiff went to the emergency room at the Capital Regional

Medical Center (CRMC) complaining of upper extremity pain.  R. 309; *see* R. 39.  On

examination, Plaintiff's upper extremities were normal to inspection and exhibited the

normal range of motion. R. 310.  Plaintiff had mild swelling on his right wrist, and

tenderness in his right extremities.  *Id.*  Plaintiff was diagnosed with probable

neuropathy.  *Id.*  X-rays of Plaintiff's right knee demonstrated anatomic alignment

without acute fracture or joint effusion.  R. 314.  There was a small superior patellar

osteophyte without erosion, otherwise negative for the right knee.  *Id.*

### C.  Medical Evidence Submitted to the Appeals Council

On March 20, 2013, and after the ALJ entered his decision, Plaintiff's counsel

submitted additional evidence consisting of two patient notes from TOC dated January

27, 2012, and February 9, 2012.  R. 24-28.  The Appeals Council considered this

information and stated that the information was "about a later time" and did "not affect

the decision about whether [Plaintiff] was disabled on or before November 7, 2011."

R. 6.

On January 27, 2012, Plaintiff presented to TOC complaining of a left wrist injury

with pain.  R. 27.  He met with William R. Stephens, M.D.  The patient notes set forth a

history of the injury (in November 2009) including a notation that Plaintiff "works as a

roofer and does a lot of lifting of tar buckets.  He cannot really do it with this side.  He

does not feel any weakness out in the hand.  He has no problems with the palmar side.

He has not noticed any deformity.  He just has this hypersensitivity and pain on the

dorsoulnar aspect of the wrist.  He takes ibuprofen constantly for this."  *Id*.  A physical

exam revealed that Plaintiff was well developed, well nourished, and in no acute

distress.  He was alert, oriented, and cooperative.  *Id*.  It was also noted:

> Focused exam of his left wrist shows him to have an extensive area of laceration
> which has now healed.  On the ulnar aspect of the wrist, there is a lot of swelling
> in this area.  He has good sensation proximal to this.  At the level of the
> laceration as well as distal to it in the dorsoulnar sensory nerve distribution, he
> has extreme hypersensitivity.  He has Tinel's over the site.  Motor function shows
> 5/5 strength in his first dorsal interosseous as well as his abductor digit minimi.
> He has a negative Froment's sign.  He has good sensation on the palmar side of
> the wrist in the median and ulnar nerve distributions.

*Id*.  The assessment is: "Left wrist dorsoulnar sensory nerve neuritis or nerve injury."  *Id*.

Dr. Stephens discussed various options, including performing a neurectomy, "get the

nerve buried and ulnar muscles hopefully would not cause him problems in the future.

He understands this would leave him with a numb dorsum of the hand, but this is

preferable to him as opposed to continuing with the symptoms he is having now.  He

wants to get this set up and once Vocational Rehabilitation approves it we will get this

done for him.  I will see him back for his preoperative history and physical."  *Id*.

On February 9, 2012, Plaintiff was referred to TOC at the request of vocational

rehabilitation for evaluation of a right knee problem.  R. 25.  X-rays were taken at TOC

for Plaintiff's bilateral knee pain and "are the standing AP and lateral views.  Lateral

views do show some calcification at the insertion of the quadriceps tendon into the

patella bilaterally and some mild bony sclerosis.  The standing AP view shows a very

minimal degenerative changes with bony sclerosis and joint space appears to be intact."

R. 26.

Plaintiff reported having knee pain "on and off for the last five year[s]" and

"[g]etting more and significant during this period of time."  R. 25.  He further reported:

> He typically feels the pain in the back of his right knee though some times [sic] he even feels a little bit in the left knee but usually the pain is most prominent posteriorly.  He says now simple movements hurt.  Sitting even for a long [sic] at night gives him trouble.  Stairs bother him a lot particularly going up.  He has worked on the roof in the past but he is having so much pain on his knee.  He has not been working there recently.  He has been to the emergency room for this and was told in 2010 that he had neuropathy in his legs as well as arthritis and he does complain of some numbness in his feet right greater than left.  Sometimes he says the numbness extends all the way up over the lateral aspect of his leg to his hip.  He has taken Aleve, which has helped him a little bit, but it does not seem to resolve the problem.

*Id*.  It was noted that Plaintiff took Ibuprofen and Aleve occasionally.  Dr. Stephens

conducted a review of systems including a personal history and Plaintiff's shoulder and

right hand pain as well as bilateral lower leg numbness and his history of arthritis,

although no other abnormalities were noted.  *Id*.  Dr. Stephens conducted a physical

exam.

> He, on examination today, is found to have a negative straight leg raise.  There is no pain with hip internal and external range of motion and no asymmetry of motion.  The knee flexion/extension is intact on the left knee.  Right knee is intact, but has pain at end range of motion with flexion and extension.  He has tenderness over his lateral joint line.  Mild over his medial joint line, but he does have a positive lateral McMurray's and mild pain with medial McMurray's.  He does have a small effusion and he has a negative Lachman's and drawer.  Negative varus/valgus.  No significant tenderness of his patellar tendon and quadriceps tendon.  Medial retinaculum is mildly tender.  There does not appear to be pain.

*Id*.  The assessment was: "Right knee probable lateral meniscus tear, possible medial

tear."  *Id*.  Dr. Stephens recommended a further evaluation with an MRI study.

Dr. Stephens also noted that eye screening was performed and there was no metal

noted in his eyes.  *Id*.

## V. Legal Analysis

### A.  Substantial evidence supports the Appeals Council's consideration of new evidence submitted after the ALJ's decision.

Plaintiff argues that the Appeals Council erred when it determined that the new evidence (from TOC) was "about a later time" and did not affect the ALJ's decision that Plaintiff was not disabled on or before November 7, 2011.  Doc. 11 at 7-9.  The Commissioner suggests that the Appeals Council properly rejected the evidence because it was dated January 27, 2012, and February 9, 2012, *see supra* at 13-16, *after* the ALJ's decision of November 7, 2011.  Doc. 12 at 8.

> Generally, a claimant is allowed to present new evidence at each stage of this administrative process.  See 20 C.F.R. §§ 404.900(b), 416.1470(b); Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council has the discretion not to review the ALJ's denial of benefits.  20 C.F.R. §§ 404.970(b), 416.1470(b).  However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision" and must review the case "if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Id.  The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome."  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).

Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 745 (11th Cir. 2011) (unpublished).  The Flowers court also stated that "[w]hen a claimant presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence," citing Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980).  Flowers, 441 F. App'x at 745.  The court further stated that "[i]f the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'"  Id.  The court concluded that the Appeals Council did not adequately consider

the claimant's new evidence.  *Id.*  The court, however, went forward and addressed whether there was a reasonable possibility that the claimant's new evidence would change the ALJ's decision.  *Id.*  (The "reasonable possibility" standard is derived from Hyde v. Bowen, 823 F.2d at 459.)

Here, the Appeals Council considered two patient notes from TOC dated January 27, 2012, and February 2, 2012, R. 25-29; *see supra* at 13-16.  R. 6.  During the application process, Plaintiff alleged an inability to work due to problems with both wrists, his eyesight, and mesothelioma.  R. 35, 38, 141-51, 177.

Plaintiff injured his *left wrist* (left hand) (the subject of the January 27, 2012, visit to TOC) in November 2009 that occurred during an altercation between Plaintiff's sister and another female.  *See supra* at 8.  Plaintiff explained during the hearing that he had not followed-up too much, although he was going through vocational rehabilitation. R. 56.  Plaintiff stated that TOSPT gave him some exercises for his shoulder and he was told to put a warm rag on his shoulder and said he needed therapy and "some other stuff for the wrist," and TOSPT spoke of sending him to a specialist, but it did not materialize.  *See supra* at 8-9.

In May 2010, Plaintiff was examined by Dr. Sampson, complaining of *right wrist* and thumb pain and other issues.  R. 279-84.  Plaintiff complained of numbness in his *left hand* following his November 2009 injury.  *Id.*  He also complained of *right knee* pain (the subject of the February 2, 2012, visit to TOSPT) and difficulty walking.  *Id.* Dr. Sampson's examination results are set forth herein.  *See supra* at 10-12.  On November 2, 2010, Plaintiff was seen at TOSPT, R. 297, 302, and these treatment notes are set forth herein.  *See supra* at 12-13.  On June 21, 2010, Plaintiff went to the

emergency room at the CRMC complaining of upper extremity pain.  R. 309.  X-rays were taken of his right knee.  R. 314; *see supra* at 13.  On January 27, 2012, over a year since his last visit at TOSPT on November 2010, Plaintiff presented to TOC complaining of a *left wrist* injury with pain and met with Dr. Stephens.  R. 27.  On February 9, 2012, Plaintiff was referred to TOC at the request of vocational rehabilitation for evaluation of a *right knee* problem and again met with Dr. Stephens. R. 25; *see supra* at 13-16.  Dr. Stephens did not provide any assessment of Plaintiff's ability to function in the workplace.

The Appeals Council considered the January and February 2012 patient notes from TOC, but concluded that they concerned "a later time."  R. 6, 9.  When new and material evidence is submitted to the Appeals Council, it is considered "only where it relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. § 404.970(b).  The Commissioner echoes the sentiment of the Appeals Council and states that the Appeals Council properly determined that the evidence "did not relate to the period on or before the date of the [ALJ's] hearing."  Doc. 12 at 8.  The Commissioner does not provide any case law to support this interpretation of the regulation.

The Appeals Council's conclusion, and necessarily the Commissioner's, that the two patient notes are "about a later time," that is after the ALJ's decision and, therefore, did not affect the disability decision, is not correct.  "The timing of the examination is not dispositive of whether the evidence is material.  If it were, all evidence obtained after the date of an ALJ decision would fail to meet the new and material standard.  Medical evidence obtained after an ALJ decision is material if it relates to the claimant's

condition on or before the date of the ALJ's decision." Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990) (citations omitted).[8]

Notwithstanding the alleged procedural irregularity (error) concerning the Appeals Council's explanation of the new evidence, this Court's consideration of the new evidence is consistent with the Eleventh Circuit's teaching that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram, 496 F.2d at 1262.[9]

The two 2012 reports from TOC are material because they relate to Plaintiff's complaints regarding his left wrist and arguably his right knee that were before the ALJ. R. 38-40. The Appeals Council considered the additional evidence and reasonably determined that the evidence provided no basis for changing the ALJ's decision. R. 5-6, 9.

This Court has reviewed the entire record and conducted a meaningful review of the new evidence based on the information contained in the ALJ's decision. Even if the

---

[8]  In Williams, the Secretary argued that the physician's "report is merely evidence of the deterioration of [the plaintiff's] condition after the ALJ hearing and, therefore, requiring her to file a new claim was appropriate." Williams, 905 F.2d at 216 n.7 (citation omitted). The court concluded that the report related to a period on or before the date of the ALJ's decision and that it related to an issue before the ALJ and, as a result, the report was material for the purposes of section 404.970(b). Id. at n.8.

[9]  In 2010, the court reviewed several Eleventh Circuit cases following Ingram and concluded that "the Eleventh Circuit has undertaken its own review of the entire record to determine 'whether that new evidence renders the denial of benefits erroneous.' . . . It appears, therefore, that the Eleventh Circuit has implemented Ingram by asking, upon review of all of the evidence (including the new evidence), whether the Commissioner's path to his decision may be reasonably discerned. If it can be discerned, then the court must determine whether the decision is supported by substantial evidence." Keene v. Astrue, Case No. 5:09cv192-SPM/WCS, 2010 U.S. Dist. LEXIS 60010, at *41-42 (N.D. Fla. May 20, 2010) (citations omitted), report and recommendation adopted, 2010 U.S. Dist. LEXIS 60067 (N.D. Fla. June 16, 2010).

Appeals Council's explanation (information "about a later time") for its rejection of the new evidence is erroneous, the Court concludes there is no reasonable possibility that the new evidence would change the ALJ's decision.  A lengthy gap exists between Plaintiff's report of problems (to TOSPT in November 2010) with his left ulnar wrist (reported as injured in November 2009) and his report to Dr. Stephens in January 2012 of his left wrist injury with pain.  (Dr. Sampson reported neuropathy in Plaintiff's left hand in May 2010.)  The same can be said regarding Plaintiff's report of problems with his right knee during an evaluation by Dr. Sampson in November 2010 (soft-tissue mass/small cyst-like lesion on his right knee) and Dr. Stephens' evaluation results in February 2012.

As noted by the ALJ, Plaintiff's "longitudinal medical history is not necessarily consistent with his allegation of disability.  The objective medical evidence does not fully support the degree of severity of the claimant's allegations, as discussed below."  R. 38.  Plaintiff's doctors, treating or consulting, have not limited his ability to work.  R. 39.  The two new reports show at best that Plaintiff's condition may have worsened after the hearing and the ALJ's decision.  The new evidence did not show, however, that Plaintiff was incapable of substantial gainful activity for a period of twelve months or more.  *See generally* Poulson v. Astrue, No. 8:06-CV-1670-T-MAP, 2008 WL 179264, at *3 (M.D. Fla. Jan. 17, 2008).[10]

Notwithstanding Plaintiff's subjective and reported difficulties with both issues, no treating physician including Dr. Stephens, offered an analysis of Plaintiff's ability or lack thereof to perform jobs in the national economy as a result of Plaintiff's complaints,

---

[10]  This is not a case where new evidence was material when new reports offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work.  *See* Hyde v. Bowen, 823 F.2d at 459.

subjective or otherwise, regarding his left wrist or right knee.  No reversible error has been shown.

### B.  Substantial evidence supports the ALJ's consideration of relevant medical evidence.

Plaintiff argues that the ALJ did not consider all of the relevant medical evidence, contrary to the ALJ's statement that he "considered all of the medical records."  Doc. 11 at 9-10; R. 40.  Specifically, Plaintiff argues that the ALJ did not assign any specific weight to Dr. Sampson's July 2010 consultative examination report and only "some weight" to Dr. Steele's July 2010 RFC assessment; and did not describe or assign any specific weight to the CRMC's June 2010 emergency department reatment record or the November 2010 evaluation of Plaintiff's wrist and shoulder impairments.  Doc. 11 at 9-10.

The ALJ devoted two paragraphs to summarizing Dr. Sampson's report of his examination.  R. 40; *see supra* at 11-12.  It is true that the ALJ did not expressly state what weight he assigned to his report.  R. 40.  This alleged error is unavailing to Plaintiff because even giving great weight to Dr. Sampson's report would not have helped Plaintiff.  Dr. Sampson did not opine that Plaintiff was incapable of performing light work.  Rather, Dr. Sampson's examination findings are relatively unremarkable and the ALJ's RFC assessment finding that Plaintiff is capable of performing light work is consistent with Dr. Sampson's report.  *See* Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (holding ALJ's failure to discuss weight given to examining physician's findings constituted harmless error where opinion did not contradict ALJ's RFC findings).

Plaintiff also argues that the ALJ erred because he did not describe or assign weight to the treatment notes from his June 21, 2010, visit to the CRMC emergency room.  *See supra* at 13.  Plaintiff contends this alleged omission was especially significant because these records diagnosed Plaintiff with arthritis and probable neuropathy.  Doc. 11 at 9.  The ALJ reviewed these records and described them in some detail, *see supra* at 13.  R. 39, 309-14 (Exhibit 9F).  Plaintiff was prescribed Naproxen to be taken as needed for pain with no refills and Neurontin with one refill.  R. 310.

The ALJ was not required to assign weight to these treatment notes because aside from a clinical impression of "arthritis" and "probable neuropathy," R. 310, which was noted by the ALJ, R. 39, there were no other discrete medical opinions offered regarding the extent of these impressions on Plaintiff's ability to work.  *See* 20 C.F.R § 404.1527(a)(2).[11]  Further, these treatment notes do not contain information that is inconsistent with the ALJ's RFC assessment.  The notes reveal that, on examination, Plaintiff's upper extremities were normal to inspection and he exhibited normal range of motion.  R. 310.  Plaintiff's right wrist revealed mild swelling and tenderness.  *Id.*  An x-ray of Plaintiff's right knee indicated no fracture, normal alignment, and only moderate degenerative joint disease.  *Id.*  Again, Plaintiff was diagnosed with arthritis and probable neuropathy, but nothing more serious, and without any impression that Plaintiff was unable to work.  *Id.*  In any event, the ALJ accounted for any functional limitations

---

[11]   Statements by physicians that do not contain judgments about the nature and severity of an impairment, such as information about what activities a claimant can still perform despite his limitations, are not medical opinions.   *See* <u>Cowan v. Astrue</u>, 552 F.3d 1182, 1189 (10th Cir. 2008).

by limiting him to light work and the record does not support greater limitations.  R. 38. No error has been shown.

Plaintiff also argues that the ALJ erred because he did not consider the November 2010 physical therapy treatment records from TOSPT, R. 297-307 (Exhibit 8F).  Doc. 11 at 9.  The ALJ expressly considered these records and noted that "[n]o further treatment was ever sought by the claimant."  R. 39; *see supra* at 13-14.

Plaintiff was diagnosed with "brachial neuritis NOS" and "open wound forearm-compl" for his left wrist/hand and "rotator cuff synd NOS" for his left shoulder.  R. 297. Subjective complaints are reported, problems and goals are described, and an assessment was provided, which included a requirement that Plaintiff have "skilled rehabilitative therapy in conjunction with a home exercise program to address the problems and achieve the goals outlined" therein.  Plaintiff's "overall rehabilitation potential" was rated as "good."  "The expected length of this episode of skilled therapy services required to address the patient's condition is estimated to be 2 months." Plaintiff and/or his family were educated regarding "their diagnosis, prognosis and related pathology."  R. 297-307.  There is no medical opinion that Plaintiff is unable to work or that imposes any greater functional limitations on Plaintiff than as found by the ALJ.  No error has been shown.

### C.  Substantial evidence supports the ALJ's credibility determinations.

Plaintiff argues that the ALJ's credibility analysis of Plaintiff is not supported by substantial evidence because the ALJ did not adequately consider the combination of Plaintiff's exertional and non-exertional impairments.  Doc. 11 at 11-12.  This argument

also lacks merit and should be rejected because substantial evidence supports the ALJ's credibility findings.

The credibility of the claimant's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988).  After considering a claimant's complaints of pain, an ALJ may reject them as not credible.  *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).  If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility.  *See* Wilson v. Barnhart, 284 F.3d 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id.*

Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that he is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a).

Pain is subjectively experienced by the claimant, but that does not mean that only a mental health professional may express an opinion as to the effects of pain.  One begins with the familiar way that subjective complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225.  *See* 20 C.F.R §§ 404.1529 (explaining how symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total limiting effects).[12]

An ALJ may credit subjective pain testimony even if objective evidence is lacking. But this is merely permissive guidance.  It does not mandate belief in the subjective testimony where the substantial evidence in the record indicates otherwise.  After all, in making the credibility finding, the ALJ is directed to articulate the findings based upon substantial evidence.  Substantial evidence may consist of objective medical findings, a lack of other objective medical findings, evidence of exaggeration, inconsistencies in activities of daily living, failure to pursue recommended physical therapy or to take prescribed medications, and the like.

The ALJ considered the evidence and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC of a full range of light work.  R. 38.  The ALJ noted that Plaintiff's longitudinal medical history was not necessarily consistent with his allegations of disability.  *Id.*  (The ALJ summarized his findings, R. 38-40.)

In assessing Plaintiff's credibility, the ALJ considered Plaintiff's activities of daily living and concluded that Plaintiff's "admitted activities of daily living are substantially more consistent with an individual able to sustain competitive employment than they are of an incapacitated person."  R. 38-39.[13]  In part, Plaintiff admitted he is able to turn a

---

[12]  Although the ALJ did not expressly refer to the three-part part standard, it is clear that the ALJ's findings, discussion, and citation to 20 C.F.R. §§ 404.1529 and 416.929, R. 38, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

door knob with both hands, pick up a gallon of milk with his right hand, wear pullover shirts, button shirts, tie his shoes, care for his personal hygiene, and do household chores.  R. 187.  At hearing, Plaintiff testified that he cannot work now because of his wrist, yet he also stated that he went back to work as a roofer following his injury to his right wrist and had to stop working only because of his incarceration.  R. 52.  Although Plaintiff's friends helped him with his work and he relied on his left hand for heavy work, R. 59, his ability to go back to work after his injury as a roofer, which is classified as heavy work, R. 65, does not support his claims of disability.  Plaintiff also testified that he walked between one and one half to two miles on the morning of the administrative hearing, despite claiming he has disabling problems with his knee.  R. 62.  Plaintiff also testified that he renovated a dilapidated trailer in April 2010 so that he could live in it at a reduced rent.  R. 64.  This reported activity detracts from his claims that he is unable to do light work.

The ALJ also appropriately noted that no physician has placed any discernible limitations on Plaintiff's ability to work.  R. 39.  Plaintiff argues that he did not have medical care.  Doc. 11 at 12.  Plaintiff had two surgeries on his right wrist and was treated by a surgeon.  These surgeons did not submit any opinions that Plaintiff was functionally limited from working.  Plaintiff also did not seek treatment from free community clinics as noted by the ALJ.  R. 39.  The lack of medical treatment for Plaintiff's impairments, even considering he does not have medical coverage, detracts

---

[13]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

significantly from his claims of disability because he has provided no concrete reasons why he could not have sought at least some degree of care from a community clinic.[14]

Finally, Plaintiff argues that the ALJ's RFC assessment does not account for Plaintiff's pain.  Doc. 11 at 12.  The ALJ stated that Plaintiff's RFC "takes into account not only the claimant's severe impairments, but also any pain caused by them by limiting him to light work."  R. 40.  Thus, the ALJ accounted for Plaintiff's pain by limiting him to light work.

Substantial evidence supports the ALJ's credibility determinations.  *See* Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").  Plaintiff's argument on this point should be rejected.

### D.  Substantial evidence supports the ALJ's reliance on the grids at step five of the sequential process in finding Plaintiff not disabled.

Plaintiff argues that the ALJ erred at step five when he relied exclusively on the grids because his pain is a non-exertional impairment that reduced the range of light work that he could perform.  Doc. 11 at 12-13.  Plaintiff argues that his non-exertional impairments of pain, as a result of his upper extremity and right knee impairments, significantly limit his ability to perform a full range of light work.  He also argues that the hypothetical question posed to the vocational expert did not include Plaintiff's upper

---

[14]  There is a November 2, 2010, note from TOSPT to refer client to a physician for evaluation for ulnar neuropathy and rotator cuff dysfunction, physical therapy in Quincy for shoulder rehabilitation and/or CHT for desensitization and strengthening. R. 300.  There are also dates set by which several identified goals were to be achieved. These programs included independent home exercise and self-care program.  R. 298-99, 303.  It is not clear that Plaintiff attended the recommended rehabilitative therapy (for his left shoulder) for two visits a week with an expected duration of four weeks.  It appears Plaintiff was given a home exercise program for his left shoulder.  R. 300, 303-04.

extremity and right knee impairments that were not found at steps two and three and, as a result, this opinion cannot not be relied on to support the ALJ's step five determination.  *Id.*[15]

If the claimant carries his burden at step four to establish that he cannot perform past relevant work, as Plaintiff did in this case, R. 41, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d at 1229; Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d at 1052; 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d at 1011.

An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-40; s*ee* 20 C.F.R. Part 404, Subpart P, Appendix 2.

> The grids are a series of matrices which correlate a set of variables-the claimant's residual functional capacity (i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience [including whether the previous work was skilled or unskilled].  Upon entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

Gibson v. Heckler, 762 F.2d 1516, 1520 (11th Cir 1985).  In determining whether exclusive reliance on the grids is appropriate, the ALJ must first categorize the claimant's impairments as either exertional or non-exertional.  *See, e.g.,* Phillips, 357 F.3d at 1241-43.  Exertional impairments affect an individual's ability to meet the seven

---

[15]  The ALJ did not rely on the vocational expert's opinion at step five.  R. 41.

strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.* at 1241 n.11.  Non-exertional impairments affect an individual's ability to meet other work-related demands and include limitations such as pain, medication side effects, and depression.  MacGregor, 786 F.2d at 1054.  An ALJ may rely exclusively on the grids when each factor used in the determination describes the claimant situation, and when a case involves only exertional impairments.  Foote, 67 F.3d at 1559.  In contrast, if the claimant has a non-exertional impairment that limits a wide range of work at a given level, an ALJ is required to consult a vocational expert.  *Id.*  Stated somewhat differently, "exclusive reliance on the grids is not appropriate wither when [the] claimant is unable to perform a full range of work at a given [RFC] or when a claimant has non-exertional impairments that significantly limit basic work skills."  Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).  When considering a claimant's non-exertional limitations, the ALJ need only determine whether the non-exertional impairments significantly limit basic work activities.  *Id.*  "Significantly limit basic work activities" has been interpreted to mean precluding a "wide range" of work at a given work level.  Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

At step five, the ALJ considered Plaintiff's age, work experience, and RFC in conjunction with the grids to determine whether Plaintiff can make a successful adjustment to other work.  R. 41.  During the hearing and in response to a hypothetical question, the vocational expert testified that Plaintiff could perform several jobs including dispatcher, non-police, sedentary with an SVP of 3; work order clerk, sedentary with an SVP of 3; and surveillance system monitor, sedentary with an SVP of 2.  R. 65-66.

In making his step five determination, the ALJ did not incorporate the vocational expert's opinion.  R. 41.  Rather, the ALJ determined that Plaintiff had only non-exertional limitations.  *Id.*  The ALJ did not, however, improperly discount Plaintiff's complaints of pain.  The ALJ considered Plaintiff's allegations of pain, R. 40, and determined, contrary to Plaintiff's wishes, that it would not significantly limit his ability to perform basic work.  *See* 20 C.F.R. § 404.1521(b).  Thus, the ALJ was entitled to rely on the grids, specifically section 202.14, when he determined that Plaintiff was not disabled.  R. 41.[16]  Substantial evidence supports the ALJ's reliance on section 202.14 because he determined that Plaintiff's pain did not significantly limit basic work activities.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on April 14, 2014.

s/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and**

---

[16]  Section 202.14 applies to a person closely approaching advanced age.  20 C.F.R. § 404.1563(d) ("If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.")  Plaintiff does not argue that the ALJ applied the wrong grid section or mis-applied section 202.14.

recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.